**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTA PARTNERS, LLC, | Case No.   1:24-cv-3509 |
| Plaintiff, | |
| vs. | |
| LIFEZONE METALS LIMITED, | |
| Defendant. | |

## <u>COMPLAINT</u>

Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant Lifezone Metals Limited ("Lifezone Metals") for breach of contract and alleges as follows:

1.      Alta brings this action to remedy Lifezone Metals's breach of an agreement governing public warrants (the "Public Warrants").

2.      The Public Warrants were originally issued by GoGreen Investments Corporation ("GoGreen"), a special purpose acquisition company or "SPAC." GoGreen issued the Public Warrants pursuant to a warrant agreement attached to GoGreen's Form S-1 registration statement filed with the SEC on June 4, 2021 and amended on July 1, 2021 and September 27, 2021 (the "Warrant Agreement"). A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit A**.

3.      On July 6, 2023, Lifezone Metals and GoGreen announced the completion of a business combination (the "Business Combination") pursuant to which Lifezone Metals expressly assumed all obligations of the Warrant Agreement.

4.    Pursuant to the Warrant Agreement's clear, unambiguous terms, holders of the Public Warrants are entitled to exercise a right to buy one ordinary share of GoGreen's common stock at a price of $11.50 per full share in the event that three conditions are met. First, 30 days must have passed since GoGreen completed a business combination. Second, the shares of common stock underlying the Public Warrants (the "Warrant Shares") must be registered under the Securities Act via an effective registration statement. Third, at the time of exercise, there must be a current prospectus relating to such Warrant Shares.

5.    On or about September 26, 2023, Alta owned 240,000 Public Warrants and was ready, willing, and able to exercise the Public Warrants on that date.

6.    At the time, the Public Warrants were exercisable because each of the three conditions precedent in the Warrant Agreement were satisfied. First, more than 30 days had passed since GoGreen completed the Business Combination with Lifezone Metals. Second, the Warrant Shares were registered via an effect registration statement on Lifezone Metals's Form F-4, which was reviewed by the U.S. Securities and Exchange Commission (the "SEC") and declared effective on June 9, 2023 (the "Form F-4"). Third, the prospectus relating to the Warrant Shares was then-current.

7.    Despite the fact that all three conditions had been met and the Public Warrants were exercisable, Lifezone Metals improperly and unlawfully blocked Alta's attempts to exercise its Public Warrants. This prevented Alta from buying Lifezone Metals shares for $11.50 per share and selling them for a higher price.

8.    By blocking Alta's attempts to exercise its Public Warrants and sell the underlying shares, Lifezone Metals directly caused damages to Alta.

9.     Alta now seeks damages arising from Lifezone Metals's refusal to permit the exercise of Alta's Public Warrants.

## PARTIES

10.     Plaintiff Alta Partners, LLC is a limited liability company. Alta's sole member, Steven Cohen, is a resident of and domiciled in Puerto Rico.

11.     On or about September 26, 2023, Alta owned and was ready, willing, and able to exercise 240,000 Public Warrants of Lifezone Metals.

12.     Defendant Lifezone Metals, Inc. is an Isle of Man company with its principal place of business at Commerce House, 1 Bowring Road, Ramsey, Isle of Man, IM8 2TF. Lifezone Metals's agent for service of process is Corporation Service Company, 19 West 44th Street, Suite 200, New York, NY 10036.

## JURISDICTION AND VENUE

13.     Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Alta and Lifezone Metals and the amount in controversy substantially exceeds $75,000.

14.     This Court may exercise personal jurisdiction over Lifezone Metals pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement. Section 9.3 of the Warrant Agreement provides that GoGreen agreed that "any action, proceeding or claim against it arising out of or relating in any way to this Agreement shall be brought and enforced in the courts of the State of New York or the United States District Court for the Southern District of New York." GoGreen also "irrevocably submit[ted] to such jurisdiction, which jurisdiction shall be [the] exclusive forum for any such action, proceeding or claim" and "waive[d] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum."

15.     As noted, Lifezone Metals assumed GoGreen's obligations under the Warrant Agreement following the Business Combination.

## FACTS

### A.  GoGreen & Lifezone Metals's Business Combination

16.     A SPAC, also known as a blank check company, is a publicly traded company that holds cash in trust for its investors and exists for the purpose of identifying a non-public target company to combine within a business combination that provides the target company with capital and brings it public as an alternative to the traditional initial public offering process.

17.     This take-public transaction is usually referred to as a "de-SPAC" transaction. Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company.

18.     In December 2022, GoGreen announced a business combination with Lifezone Metals, a developer of battery metals. Lifezone Metals would become a publicly listed company that would be listed on the New York Stock Exchange and trade under the new ticker symbol "LZM."

### B.  The Warrant Agreement

19.     The Public Warrants at issue were issued pursuant to the Warrant Agreement between GoGreen and Continental Stock Transfer & Trust Company ("Continental").

20.     Pursuant to Section 4.5 of the Warrant Agreement, the terms of the Warrant Agreement were automatically modified upon the close of the Business Combination such that holders of Public Warrants would have the right to purchase and receive shares in Lifezone Metals.

21.     The terms and conditions of the Warrant Agreement are expressly incorporated into each Public Warrant certificate and are enforceable against Lifezone Metals by each Public Warrant holder.

22.     Pursuant to Sections 3.2 and 3.3.2 of the Warrant Agreement, the Public Warrants are exercisable 30 days following the completion of GoGreen's business combination, provided the Warrant Shares are registered under the Securities Act and a prospectus relating to the Warrant Shares is current. The Warrant Agreement sets the exercise price as $11.50.

**C. The Registration of the Warrant Shares Pursuant to the Form F-4**

23.     Lifezone Metals cannot credibly dispute that the Form F-4 registered the Warrant Shares. Indeed, GoGreen's CEO confirmed to Alta *in writing and before the completion of the merger* that the Form F-4 registered the Warrant Shares.

24.     On May 17, 2023, GoGreen's CEO John Dowd responded to an email from Alta and, copying several representatives of Lifezone Metals, informed Alta that "[t]he warrants are registered on the F-4, *as are the common shares underlying the warrants*" and that "[t]he warrants are *exercisable after 30 days post-closing*."

25.     Dowd's statement was entirely consistent with the text of the Form F-4. For example, the Calculation of Filing Fee Tables to the Form F-4 listed the "Ordinary Shares issuable upon exchange of Warrants" (i.e., the Warrant Shares) as one of the "Newly Registered Securities" and calculated a registration fee of $18,334.66 for the Warrant Shares. The notes to the Calculation of Filing Fee Tables further specified that the "Ordinary Shares issuable upon exchange of Warrants" consisted of "Lifezone Metals Ordinary Shares issuable upon exercise of warrants of Lifezone Metals."

26. Upon information and belief, Lifezone Metals and/or GoGreen paid the registration fee associated with the registration of the Warrant Shares.

27. If Lifezone Metals had intended to exclude the Warrant Shares from registration on the Form F-4—which, in any event, it could not do according to SEC regulations—it would not have paid to register them. Nor would the Form F-4 have referenced the Warrant Shares as being registered pursuant to the Form F-4.

28. The Proxy Statement and Prospectus for the Form F-4 also confirmed that it was registering "up to an aggregate of 79,887,917 Lifezone Metals Ordinary Shares, *including 14,467,500 Lifezone Metals Ordinary Shares issuable upon exercise of Warrants*."

29. The Form F-4 did not include any statement or disclosure that the Warrant Shares were not being registered on the Form F-4.

30. In addition, the Form F-4 did not include any statement or disclosure that holders of the Public Warrants may not be able to exercise the Public Warrants 30 days after completion of the Business Combination or that the Public Warrants would be exercisable only if the Warrant Shares were covered by an additional registration statement that would become effective, if at all, at an unknown time in the future.

31. Based on the Form F-4, Lifezone Metals represented to the investing public generally that once the Form F-4 was declared effective by the SEC, the Warrant Shares would be registered and, assuming the prospectus remained current, the Public Warrants would become exercisable 30 days following completion of the Business Combination.

**D. SEC Regulations Concerning the Registration of the Warrant Shares**

32.     SEC regulations, as well as the instructions for Form F-4, make clear that the Form F-4 may be used to register ***both*** warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer.

33.     According to the SEC, a Form F-4 is to be used for the "[r]egistration of securities issued in business combination transactions." Securities and Exchange Commission, *Edgar Filer Manual (Volume II)* at 3-27, 3-42 (Dec. 2020), https://www.sec.gov/info/edgar/forms/edgform.pdf.

34.      Similarly, 17 C.F.R. § 239.25 provides that Form F-4 may be used for offerings of securities to be issued "in a transaction of the type specified in paragraph (a) of Rule 145." Rule 145(a) covers an "offer, offer to sell, offer for sale, or sale" of securities related to a "merger or consolidation." 17 C.F.R. § 230.145(a)(2).

35.     Securities Act Rule 415, in turn, states that "securities which are to be issued in connection with business combination transactions" may be offered "on a continuous or delayed basis," which can occur after the closing of the business combination. 17 C.F.R. § 230.415(a)(1)(viii). The instructions for Form F-4 expressly incorporate these rules.

36.     In fact, the SEC's published interpretations of its rules confirm that the Warrant Shares were ***required to be*** registered on the Form F-4. The SEC's longstanding position is that an issuer is deemed to be offering—and thus must register—the securities underlying a convertible security (e.g., the shares underlying warrants) if the convertible security can be exercised within 12 months. *See* SEC Division of Corporation Finance's C&DI 139.01 (stating that if a security is convertible or exercisable into the underlying security within one year of an offering, then the offering of both the warrant and the underlying security is deemed to be taking place and "the

underlying securities **must be registered** at the time the offer and sale of the convertible securities are registered" (emphasis added)).

37.     The SEC highlighted this requirement in connection with the SPAC business combination transaction for Li-Cycle Holdings Corp. ("Li-Cycle") (NYSE: LICY) in which Li-Cycle sought to register shares of common stock issuable upon exercise of warrants on its Form F-4 registration statement.

38.     As required by C&DI 139.01, the SEC instructed Li-Cycle to remove a risk factor disclosure that claimed the common stock underlying Li-Cycle's warrants was not being registered on the Form F-4 and that warrant holders would be subject to risk that an effective registration statement registering the warrant shares "may not be in place when an investor desires to exercise warrants." *See* SEC Comment Letter to Li-Cycle Holdings Corp. Re: Registration Statement on Form F-4 (Apr. 27, 2021). Li-Cycle removed the risk factor in advance of its Form F-4 being declared effective, and, based on the direction it received from the SEC, registered the warrant shares on the Form F-4.

39.     In addition, John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4 (the domestic issue equivalent of the Form F-4), has offered expert testimony in another federal proceeding in which he confirms that Form S-4 "can be used to register the offer and sale of the warrants, the resale of the warrants, the exercise of the warrants for cash and the resulting issuance of the common stock upon exercise of the warrants, as well as the resale of such common stock." Expert Report of John J. Huber, ECF No. 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc*., No. 22-cv-03476 (S.D.N.Y. Aug. 30, 2022) ("Huber Rpt.").

40.     Similarly, a practicing securities lawyer with over 35 years' experience in private practice and at the SEC has offered expert testimony in a separate proceeding that the Form S-4

"is not limited to registering securities offered solely pursuant to the immediate business combination transaction" and "can also be used to register securities that are offered on a delayed or continuous basis, such as the shares that are exchanged for warrants that are exercisable 30 days subsequent to the business combination." Expert Report of Walter Van Dorn, Esq. at 13, ECF No. 30-1, *Alta Partners, LLC v. Getty Images Holdings, Inc.*, No. 22-cv-8916 (S.D.N.Y. May 26, 2023).

**E. Lifezone Metals Refuses to Acknowledge That the Public Warrants Were Exercisable**

41.     Despite the fact that that the Public Warrants were exercisable on or about September 26, 2023, Lifezone Metals improperly repudiated its obligations under the Warrant Agreement and refused to acknowledge Alta's right to exercise its Public Warrants to purchase Lifezone Metals's common shares for $11.50 per share and sell those shares at a higher price.

42.     Beginning in August 2023, Alta contacted Lifezone Metals and Continental to confirm that the Public Warrants were exercisable.

43.     On August 16, 2023, Eduardo Royes responded on behalf of Lifezone Metals and falsely claimed that the "warrants are only exercisable from the time the F-1 goes effective," referring to Lifezone Metals's Form F-1 filed with the SEC on June 29, 2023 (the "Form F-1") and was not declared effective until September 29, 2023.

44.     On or about September 26, 2023, Alta submitted a written notice of exercise for 200,000 Public Warrants, noting that the Public Warrants and Warrant Shares were registered on the Form F-4. Although not required to submit a notice of exercise because Lifezone Metals had already repudiated its obligations under the Warrant Agreement, Alta submitted the notice of exercise to give Lifezone Metals a final opportunity to recognize its error and allow Alta to exercise all of its Public Warrants.

45.    Lifezone Metals refused to change its incorrect position as to the registration of the Warrant States, which prevented Alta from exercise the Public Warrants.

46.    As a direct and proximate result of Lifezone Metals repudiating its obligations under the Warrant Agreement and precluding Alta from selling the Warrant Shares, Alta suffered damages.

**COUNT I:  Breach of Contract—Failure to Exercise the Public Warrants**

47.    Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

48.    The Warrant Agreement is an enforceable contract that Lifezone Metals expressly assumed.

49.    Alta performed its obligations under the Warrant Agreement.

50.    On or about September 26, 2023, Alta owned and intended to exercise 240,000 Public Warrants of Lifezone Metals.

51.    Pursuant to the clear and unambiguous terms of the Warrant Agreement, the Public Warrants were exercisable on September 26, 2023.

52.    When Lifezone Metals claimed that the Public Warrants would not become exercisable until the Form F-1 was declared effective, Lifezone Metals materially breached and repudiated its obligations under the Warrant Agreement.

53.    As a direct and proximate consequence of Lifezone Metals's repudiation and material breach of the Warrant Agreement, Alta was denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.      Awarding general and compensatory damages to Alta in an amount to be determined at trial;

B.      Awarding Alta costs and disbursements, including attorney's fees, related to this dispute;

C.      Prejudgment and post-judgment interest; and

D.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated:  May 7, 2024
           Hartford, Connecticut

PLAINTIFF, ALTA PARTNERS, LLC

By: */s/ Jeffrey Mueller*
     Jeffrey Mueller
     Matthew Letten
     Day Pitney LLP
     242 Trumbull Street
     Hartford, Connecticut 06103
     T: (860) 275-0100
     F: (860) 275-0343
     jmueller@daypitney.com
     mletten@daypitney.com

     Gregory Bruno
     Day Pitney LLP
     605 Third Avenue, 31st Floor
     New York, NY 10158
     T: (212) 297-2452
     F: (212) 602-0092
     gbruno@daypitney.com

     *Attorneys for Plaintiff Alta Partners LLC*

-11-